IN THE

# APPELLATE COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1914, IN THE NINETY-NINTH YEAR OF THE STATE.

---

## THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. VANCE.

[No. 8,389. Filed January 22, 1915.]

1. RAILROADS.—*Injury to Animals on Tracks.—Complaint.*—A complaint in an action against a railroad company under §5436 Burns 1914, §4025 R. S. 1881, for injuries to a horse which strayed through an opening in the fence along defendant's right of way, alleging that defendant at the time of the injury owned, managed and operated a certain railroad locomotive and cars in the county in which the action was filed, and that at the said time, at a certain place on its right of way in such county where defendant was required to maintain a proper fence, defendant neglected and failed to maintain such fence, etc., and that plaintiff's horse strayed upon defendant's track "at the place aforesaid", etc., was sufficient as against a demurrer questioning the sufficiency of the averments to show jurisdiction of the subject-matter, and that the horse went upon the track at a point where the defendant was required to maintain a fence. p. 2.

2. APPEAL.—*Review.—Harmless Error.—Instructions.*—In an action for injuries to a horse that strayed upon defendant's railroad track at a point where defendant was required to maintain a fence, an instruction which authorized a recovery for the loss of service resulting from the injury in addition to the difference in the value of the horse before and after the injury was harmless, where the verdict awarded plaintiff only the amount of the difference in value shown by undisputed evidence. p. 3.

3. RAILROADS.—*Injury to Animals on Tracks.—Action.—Evidence. —Sufficiency.*—In an action for injuries to a horse that strayed upon defendant's right of way at a point where defendant was

required to maintain a fence, evidence showing an opening in the fence through which the plaintiff's horse strayed, though probably sufficient to justify an inference that the horse was upon the track at some time during the night, was insufficient to sustain a verdict for plaintiff in the absence of any evidence whatever to show that such horse was upon the track when a train passed, or that the injury was the result of any cause for which defendant would be liable. pp. 4, 6.

4. RAILROADS.—*Injury to Animals on Tracks.—Action.—Burden of Proof.*—In an action based on §5436 Burns 1914, §4025 R. S. 1881, to recover for injury to a horse alleged to have strayed upon defendant's railroad track, the plaintiff must allege and prove that the injury was caused by the horse being struck by one of defendant's locomotives, cars, or other carriages. p. 6.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by Walter W. Vance against The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*G. E. Ross,* for appellant.
*Miller C. Kent* and *Meade S. Hays,* for appellee.

HOTTEL, C. J.—This is an action brought under §5436 Burns 1914, §4025 R. S. 1881, for damages for injuries to a horse which strayed from appellee's enclosure and afterwards entered on appellant's right of way through an opening in appellant's fence. A demurrer to the complaint was overruled, and the cause was put at issue by a general denial. A trial by jury resulted in a verdict in appellee's favor for $120. A motion for new trial was overruled and judgment rendered on the verdict.

The ruling on the demurrer to the complaint, and the ruling on the motion for new trial are each assigned as error and relied on for reversal. The demurrer contains

1. three grounds, the first and second of which question the sufficiency of the averments of the complaint to show the jurisdiction of the court over the subject-matter of the action, and the third ground charges, in effect, that it is not sufficiently alleged that appellee's horse got upon appellant's railroad track at a point where it was required to

fence its right of way. Neither of these objections is tenable. They are met by the following averments of the complaint. The appellant "is a corporation owning and operating a certain railroad, locomotive and cars in the county of Grant in the State of Indiana, and was the owner of and managing and operating said railroad, locomotive and cars on the 6th day of October, 1909; that said company at said time and at a certain place on its right of way in Grant County, Indiana, had neglected and failed to maintain a fence sufficient to turn stock and at a place where said company was required by law to have and maintain a fence sufficient to turn live stock. * * * On said day the plaintiff owned, and now owns a * * * gelding, which horse *at the place aforesaid,* where said company was required to keep and maintain a fence sufficient to turn stock, strayed in and upon said company's track where said locomotive and cars were so operated by the agents and servants of said company * * * and was run against * * * by a locomotive and cars belonging to said company *then and there* being run and operated by the agents and servants of said company at the time in the employ of said company." It will be seen that these averments of the complaint relative to ownership, management and operation of said road are limited to Grant County, and it is expressly charged that along its right of way in such county appellant neglected and failed to maintain a fence, and that at such "place aforesaid" the horse strayed in and on the track. The complaint, in the respects mentioned, is clearly sufficient under the recent case of *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99.

Error is predicated on the giving of instruction No. 7, which is as follows: "If you find for the plaintiff it will be your duty to assess the damages which he is entitled to recover on account of the alleged injury to the horse. That would be the difference between its value before the injury and its value following the injury,

if shown by the evidence in this case, together with such loss of service of the animal, if any, as may have resulted from the injury complained of, if any, has been shown by the evidence.'' It is urged that this instruction is erroneous ''because contrary to the statute and it allows and directs the jury to assess double damages for the plaintiff, namely, for the difference in the value of the horse before and after the injury and also for the loss of the services of the horse after the injury.'' The instruction is open to criticism, but it appears that appellant was not harmed thereby. The evidence as to the value of the horse was undisputed, and shows his value before the injury to be $250, and his value after the injury $130. The verdict is for the difference in these two values. It therefore affirmatively appears from the record that that part of the instruction complained of as being harmful to appellant was ignored by the jury and hence furnishes no ground for reversal. *Lake Shore, etc., R. Co.* v. *Myers* (1912), 52 Ind. App. 59, 71, 98 N. E. 654, 100 N. E. 313; *Gregory* v. *Arms* (1911), 48 Ind. App. 562, 578, 581, 96 N. E. 196; *Valparaiso Lighting Co.* v. *Tyler* (1912), 177 Ind. 278, 284, 96 N. E. 768.

It is next insisted that the verdict is not sustained by sufficient evidence. The evidence is very unsatisfactory in several respects. We shall not attempt to give it in detail, but will only indicate that part affecting the question on which our opinion turns. Late in the afternoon, or in the evening of October 6, 1909, the horse in question, with four others was turned into one of appellee's fields. This field and the one on the west of it are south of appellant's railroad and parallel therewith and between them there was a rail fence, and in it, there was a panel or two which had been from time to time laid down to permit appellee to pass through with stock and vehicles. It seems that this particular place in the fence was somewhat lower and probably not quite so substantial as the remaining part, and sometime during the night the horses, at

this point, as indicated by their tracks, got through the fence into the field on the west. In the latter field there was an opening about five feet wide in the fence along appellant's right of way. The right of way fence at said opening had been a wire fence, part or all of which, was made of barbed wire and the opening had been made by cutting the several wires near the post to which they were attached and turning the wires back east and against the fence. The morning following the evening when the horses were turned out, a search for the horses revealed, as before indicated, that they had passed out, and onto appellant's right of way. Their tracks indicated they had passed through this gap onto appellant's right of way. Horse tracks were seen by several of the witnesses along appellant's railroad tracks, and the marks of the horses' shoes were seen on the ties. At a distance not further than seven feet from the track, and according to the evidence of one witness, closer to the track, a horseshoe was found on the right of way somewhat twisted and with some of the nails in it. The injured horse had lost a shoe and there was some evidence tending to identify the shoe so found as being the shoe which the injured horse had lost. The horses were found at different places. The injured horse was found north of the railroad near a gate that crosses the railroad and inside the field and up near what was called the "cattle turns". All were on the north side of the track. When found the horse in question was injured on the right hind leg just below the hock joint. One witness described the injury as follows: "He was cut * * * right here at the back of the hind leg * * * between the hock joint and the hoof, pretty well up at the joint * * * It looked like the leader was about half cut off." Another witness stated that the horse "was cut right below the knee, right in the thick part there like it had been cut on a barb wire." Another witness described the wound as follows: "He was cut on the hind leg, right hind leg, right below

what we call the hock joint, * * * It was a cut that long * * * I suppose that 'it was three inches long, as though something had struck him. * * * It seemed to be a clean cut. It was not bruised. It looked to me it was cut an inch deep. * * * You could see the leaders in the leg and one of them seemed to be cut or bruised.''

No witness saw any of the horses on the railroad right of way or track. During the night of their escape twelve freight trains and two passenger trains passed over appellant's road at the point where said horses' tracks were seen, but there was no evidence that the injured horse, or any horse, was on or along said railroad track at the time of the passage of any of said trains. Under §5436, supra, on which appellee's action is based, appellee was required to allege and prove that the injured horse was so injured by being struck by one of appellant's locomotives, cars, or other carriages. Jeffersonville, etc., R. Co. v. Downey (1878), 61 Ind. 287; Louisville, etc., R. Co. v. Thomas (1886), 106 Ind. 10, 5 N. E. 198; Campbell v. Indianapolis, etc., Traction Co. (1906), 39 Ind. App. 66, 74, 79 N. E. 223.

The evidence is probably sufficient to justify the inference that the injured horse was on the tracks sometime during that night, but on the question of whether it was there when any of the trains passed, the evidence is completely silent, and the law will not permit the basing of one inference on another inference. United States v. Ross (1875), 92 U. S. 281, 23 L. Ed. 707; Young v. Montgomery (1903), 161 Ind. 68, 70, 67 N. E. 684; Warner v. Marshall (1906), 166 Ind. 88, 117, 118, 75 N. E. 582. There were no blood marks or any other physical evidence of injury to a horse, found anywhere along appellant's tracks, nothing found thereon to indicate that any horse had been injured by any of appellant's locomotives, cars, or carriages, and there was nothing in the character of the in-

jury that in any way tended to justify an inference that it was inflicted by a locomotive or car rather than by some other means. The evidence in this respect left .the question of how the injury was inflicted open to mere speculation and guess, with the evidence against rather than in favor of a guess, that it was inflicted by a locomotive or car. There is, therefore, a total failure of evidence in the respect indicated and for this reason the motion for a new trial should have been sustained.

The judgment below is therefore reversed with instructions to the trial court to sustain the motion for a new trial and for any further proceedings not inconsistent with this opinion.

NOTE.—Reported in 108 N. E. 158. As to the duty of railroad companies to fence their tracks where no statute exists requiring it, see 7 Am. Rep. 47. See, also, under (1) 33 Cyc. 1257, 1261; (2) 33 Cyc. 1325, 1299, 1312; 38 Cyc. 1814; (3) 33 Cyc. 1293; (4) 33 Cyc. 1274, 1257.